UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MATTHEW JAAKOLA,                                    Civ. No. 13-2919(DSD/JSM)
KRISTEN JAAKOLA,

       Plaintiffs,                                    REPORT AND RECOMMENDATION

v.

THE BANK OF NEW YORK MELLON,
f/k/a THE BANK OF NEW YORK as TRUSTEE
for CERTIFICATE HOLDERS of CWMBS, INC., CHL
MORTGAGE PASS THROUGH TRUST 2006-HYB-2 MORTGAGE
PASS THROUGH CERTIFICATES, SERIES 2006-HYB2,
et. al.

       Defendants.

       This matter came before the undersigned on defendants' Motion to Dismiss [Docket No. 7].  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. §636(b)(1)(A), (B), Local Rule 72.1, and the Amended Administrative Order issued by Chief Judge Michael Davis on October 23, 2013 [Docket No. 4].  Pursuant to this Court's Order of November 1, 2013 [Docket No. 13], this matter was decided on the parties' written submissions.

       Plaintiffs seek to invalidate the foreclosure of the mortgage on their home. Plaintiffs asserts three claims against defendants Bank of New York Mellon f/k/a The Bank of New York as Trustee for the Certificateholders CWMBS, Inc., CHL Mortgage Pass Through Trust 2006-HYB-2 Mortgage Pass Through Certificates, Series 2006-HYB2 ("BONYM") and Bank of America, NA ("BOA"): (1) quiet title to determine adverse claims under Minn. Stat. §599.01; (2) declaratory judgment; and (3) slander of title.  For

the reasons below, the Court recommends that defendants'[1] Motion to Dismiss be granted and plaintiffs' claims be dismissed with prejudice.

## I.    BACKGROUND

On or about September 26, 2013, plaintiffs sued BONYM and BOA ("defendants") in state court.  Notice of Removal, Ex. A (Summons and Complaint) [Docket No. 1-1].  Defendants removed the suit to Federal District Court on October 23, 2013, pursuant to 28 U.S.C. §1332(a).  Notice of Removal [Docket No. 1].  The facts bearing on the motion to dismiss are as follows.  On November 23, 2005, Millissa Tatro entered into a Note and Mortgage ("Mortgage") with American Brokers Conduit ("ABC") for property located in Ham Lake, Minnesota ("Property").  Complaint, ¶¶1, 5 [Docket No. 1-1].  Mortgage Electronic Registration System, Inc. ("MERS") was named as the nominee for ABC.  Id.  Tatro "did not borrow any money from the named Defendant." Id., ¶6.  Plaintiffs alleged that they acquired their interest in the Property from Tatro through a quit claim deed executed and delivered on December 17, 2011, and a second quit claim deed executed and delivered on September 10, 2013.  Id., ¶2.[2]

---

[1]    In the caption of their Complaint, plaintiffs also purport to sue "all other persons unknown claiming any right, title, estate, interest, or lien in the real estate described in the complaint herein."  As "[t]here are no factual allegations sufficient to identify these unnamed defendants or state a claim against them," the Court recommends that all claims against them be dismissed.  See Sonsalla v. Mortgage Elec. Registration Sys., Inc., Civ. No. 13-659 (JRT/JSM), 2013 WL 4052825, at *1 (D. Minn. Aug. 9, 2013) (citing Estate of Rosenberg ex rel. Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir.1995) (affirming dismissal of unidentified defendants about whom no factual allegations were made)).

[2]    A quit claim deed dated December 17, 2011 and recorded on October 11, 2013, purporting to convey the Property from Tatro to Matt Jaakola, is attached to the Affidavit of William Butler [Docket No. 15-1].

ABC and BONYM's predecessors in interest securitized the mortgage loan into a mortgage-backed security trust entitled "CHL Mortgage Pass Through Trust  2006-HYB-2 Mortgage Pass Through Certificates, Series 2006-HYB2."  ("Series HYB2 Trust").  Id., ¶7.  The securitization process was governed by a Pooling and Service Agreement ("PSA") and a Mortgage Loan Purchase Agreement.  Id.  The PSA required that the parties to the securitization documents create and deliver documents creating a complete chain of title, including assignments of mortgage and properly endorsed promissory notes to and from the following entities: (1) from Countrywide Home Loans, Inc. to CWMBS, Inc.; and (2) from CWMBS, Inc. to Bank of New York, the Trustee of the Series 2006-HYB2 Trust.  Id., ¶8.  The PSA required that the Trustee acknowledge receipt of these documents.  Id., ¶10.  The closing date of the 2006-HYB2 Trust was February 8, 2006.  Id., ¶12.

On July 16, 2010, Steven H. Bruns executed an Assignment of Mortgage from MERS (as nominee for ABC) to BONYM, as Vice President of MERS.  Id., ¶24, Ex. 8 (Assignment of Mortgage).   The Assignment was recorded in the Anoka County Recorder's office on August 30, 2010.  Id.  When Bruns signed the Assignment of Mortgage, he was an attorney employed by the Peterson, Fram & Bergman, P.A. law firm.  Id.

On August 12, 2010, Lance Bell, as Vice President for BONYM, signed a Notice of Pendency & Power of Attorney to Foreclose regarding the Property.  Id., ¶25, Ex. 9 (Notice of Pendency & Power of Attorney to Foreclose).  The Notice of Pendency & Power of Attorney was recorded in the Anoka County Recorder's office on August 30, 2010.  Id.  The Notice of Pendency & Power of Attorney authorized the Peterson, Fram

& Bergman law firm to foreclose on the Mortgage by advertisement on behalf of BONYM. Id.

A sheriff's sale of the Property was conducted on July 18, 2011. Id., ¶26, Ex. 10 (Sheriff's Certificate of Sale and Foreclosure Record). Peterson, Fram & Bergman appeared at the sale on behalf of BONYM and bid the amount allegedly due on the note, $609,718.23. Id. Plaintiffs specifically denied that BONYM had the right to exercise the power of sale in the Mortgage or was entitled to enforce the note on the day of the sale. Id.

On or about August 28, 2013, BOA offered plaintiffs a "Move Out Agreement" in which BOA claimed that it acquired the Property through "foreclosure sale and subsequent Trustee's Deed . . . ." and was owner of the Property. Id., ¶27, Ex. 11 (Move Out Agreement).

Plaintiffs alleged the foreclosure was void because the Assignment of Mortgage from MERS to BONYM violated the terms of the securitization documents and New York law. Id., ¶33. Alternatively, if the terms of the securitization documents were followed, the foreclosure is void because the PSA required BONYM to certify receipt of assignments of mortgage, and those assignments were not recorded before the foreclosure. Id., ¶34.

Plaintiffs further alleged that Bell has been identified as an unauthorized "robo-signer" by McDonnell Property Analytics, which was hired by the Southern Essex District Registry of Deeds, Salem, Massachusetts, to audit its files. Id., ¶35; Ex. 14 ("Forensic Examination of Assignments of Mortgage Recorded During 2010 in the Essex Southern District Registry of Deeds" showing the name "Lance Bell" on a list of

robo-signers).    Plaintiffs alleged the foreclosure was void because the Notice of Pendency & Power of Attorney was executed by a "known" unauthorized signer (i.e. Bell).  Id., ¶36.

Plaintiffs pled the following causes of action:

Count I sought a determination of adverse claims under Minn. Stat. §599.01, et. seq.  This Count alleged that in a quiet title action, defendant has the burden of proof, and consequently, defendants must prove their interest in the Property by a preponderance of evidence.  Id., ¶¶38-47.

Count II sought a declaratory judgment pursuant to Minn. Stat. §551.01 et. seq. that "[BONYM's] interest in the Property and/or Mortgage is void and that the foreclosure is void" and that "[p]laintiffs remain the fee owners of the [P]roperty."  Id., ¶¶49-50.

Count III alleged slander of title based on defendant's drafting and recording of documents[3] that plaintiffs claimed were false and not executed by legally authorized persons, which evidenced a reckless disregard for the truth and that created a cloud on plaintiffs' title to the Property.  Id., ¶¶52-54.

As relief, plaintiffs sought a determination of the alleged adverse interests in the Property; a declaratory judgment that the Mortgage, Sheriff's Certificate of Sale, Assignment of Mortgage, and Notice of Pendency & Power of Attorney were void; and an order that plaintiffs are the fee owners of the Property.  Complaint, Prayer for Relief, ¶¶I, II.

---

[3]    The Complaint does not identify these documents, but the Court assumed plaintiffs were referring to the Assignment of Mortgage signed by Bruns and the Notice of Pendency & Power of Attorney signed by Bell.

Defendants moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, first arguing that plaintiffs were barred by the preclusion doctrines of <u>res judicata</u> and collateral estoppel because plaintiffs' claims were raised and resolved in prior litigation involving the mortgage borrowers, Milissa and Anthony Tatro, in <u>Wang Xang Xiong v. Bank of America</u>, N.A., Civ. No. 11-03377 (JRT/JSM), 2012 WL 4470281 (D. Minn. Aug. 10, 2012), <u>aff'd</u> <u>sub</u> <u>nom.</u>, <u>Welk v. Bank of Amer.</u>, N.A., 515 Fed. Appx. 640 (8th Cir. 2012).  Defendants' Memorandum of Law in Support of Motion to Dismiss ("Defs' Mem."), pp. 1-2, 7-14 [Docket No. 9].

Defendants also maintained that plaintiffs lacked standing to sue because they have no interest in the Property.  <u>Id.</u>, p. 15.  BONYM acquired the Property at the foreclosure sale and holds title to the Property.  <u>Id.</u>  The Property was not redeemed within the statutory six-month period and, therefore, BONYM is the owner.  <u>Id.</u> Accordingly, the purported conveyance from Tatro to the Jaakolas did not convey an interest in the Property and they have no legal rights or interest to assert.  <u>Id.</u>

Third, defendants moved to dismiss the Complaint on grounds that it failed to state a claim as a matter of law.  <u>Id.</u>, pp. 16-28.  As to plaintiffs' quiet title claim, defendants contended that plaintiffs were simply wrong that all they needed to allege were conclusory statements that they were in possession of the Property and that defendants claimed an adverse interest.  <u>Id.</u>, pp. 16-19.  According to defendants, this "burden shifting" argument is "wholly contrary" to established precedent and has been rejected by every court to consider it.  <u>Id.</u>; Defendants' Reply Memorandum ("Defs' Reply"), pp. 8-10 [Docket No. 16].  Defendants also asserted that plaintiffs' claims of unrecorded assignments of the Mortgage were purely speculative and unrecorded

6

assignments cannot be inferred on the basis of securitization contracts.  Defs' Mem., pp. 19-20; Defs' Reply, pp. 11-12.  Further, the public record shows an unbroken chain of title from MERS to BONYM.  Defs' Mem., p. 20.

Defendants rejected plaintiffs' theory that Bruns was not legally authorized to sign the Assignment of Mortgage.  Id., pp. 20-21.  Defendants contended that this allegation was wholly speculative and conclusory and, at any rate, plaintiffs lacked standing to challenge the Assignment because they were not parties to the Assignment.  Id., pp. 22-23.

Defendants also maintained that plaintiffs' reliance on the PSA to invalidate the foreclosure should be rejected, arguing that plaintiffs could not invoke the PSA or New York law to void the foreclosure because they were not parties or third-party beneficiaries to the PSA they allege was breached.  Id., pp. 23-24; Defs' Reply, pp. 10-11.  Even if plaintiffs had standing, they have misstated the requirements for MERS mortgages described in the PSA, which do not require the assignments plaintiffs contended defendants failed to record.  Id., p. 24.

As to plaintiffs' declaratory judgment count, defendants argued that declaratory judgment is not a cause of action, it is a remedy.  Id., p. 25.  Because plaintiffs' underlying claims all failed, the remedy of declaratory judgment must also fail.  Id.; Defs' Reply, p. 13.

Finally, defendants sought dismissal of plaintiffs' slander of title claim on the ground that plaintiffs' assertion that the defendant slandered title to the Property by drafting and recording false and invalid documents not signed by authorized persons was unsupported by any facts and, at any rate, plaintiffs failed to plead malice, a

necessary element of slander of title.  Id., pp. 26-27.  Additionally, plaintiffs did not allege that they relied on any of the allegedly false representations in the documents—a requisite for a slander of title claim.  Id., p. 27 (citing Welk v. GMAC Mortg., LLC., 850 F. Supp.2d 976, 994 (D. Minn. 20102), aff'd, 720 F.3d 736 (8th Cir. 2013).

## II.   LEGAL STANDARDS

In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true.  Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).  In addition, a court must afford the plaintiff all reasonable inferences from those allegations.  Blankenship v. USA Truck, Inc., 601 F.3d 852, 853 (8th Cir. 2010).  At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than a unadorned, the-defendant-unlawfully-harmed-me-accusation."  Iqbal, 556 U.S. at 678 (internal quotation marks and citations omitted).  A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Id. (quoting Twombly, 550 U.S. at 555).  Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 677 (quoting Twombly, 550 U.S. at 556).   "[T]he plausibility standard, which requires a federal court complaint to 'state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Ritchie v. St. Louis Jewish Light, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted).   "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

As a general rule, the Court may not consider materials "outside the pleadings" on a motion to dismiss, without converting the motion to dismiss to a motion for summary judgment.   Fed. R. Civ. P. 12(d).   "The court, however, 'may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings,'" without converting the motion into one for summary judgment.   See Little Gem Life Sciences, LLC v. Orphan Medical, Inc., 537 F.3d 913, 916 (8th Cir. 2008) (quoting Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (internal citation and punctuation omitted)); see also Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697, n. 4 (8th Cir. 2003).

For the reasons set forth below, the Court concludes that plaintiffs failed to state a claim for relief and therefore, defendants' motion should be granted.[4]

## III.   DISCUSSION[5]

As a preliminary matter, the Court notes that the only evidence of plaintiffs' interest in the Property are the two quit claim deeds that plaintiffs allege transferred Tatro's interest in the Property to them.  Complaint, ¶2.  There was no explanation as to why there are two quit claim deeds.  Defendants have taken the position that either the plaintiffs are in privity with Tatro, (Def.'s Mem., p. 10), and can apparently stand in her shoes to assert their claims or they are not owners of the Property because they did not

---

[4]     After defendants submitted their reply brief, plaintiffs' counsel Butler filed a document entitled Request for Judicial Notice Pursuant to Fed. R. Evid. 201.  [Docket No. 17].  This document recited many of the same facts alleged in the Complaint, and then sought "mandatory judicial notice" of these facts, which relate to the allegations in the Complaint regarding the CWMBS 2006-HYB2 Trust.  Defendants objected to this request.  [Docket No. 18].  Having concluded that plaintiffs' claims are meritless and should be dismissed, the Court did not consider plaintiffs' Request for Judicial Notice.

[5]     As this Court has determined that plaintiffs' underlying claims fail on the merits, it need not decide whether their claims are barred by issue and claim preclusion.  See Simmer v. HSBC Bank USA, N.A., Civ. No. 13-1549 (DSD/AJB), 2013 WL 6244710, at *5 (D. Minn. Dec. 3, 2013) (declining to reach a determination on res judicata or estoppel because the underlying claims fail on the merits); Schumacher v. Federal Home Loan Mortg. Corp., Civ. No. 13-29 (DSD/FLN), 2013 WL 3033746, at *2 (D. Minn. June 17, 2013) (stating "defendants argue that this action is barred by res judicata. . .and that this lawsuit is nothing more than a brazen attempt to relitigate Schumacher's claim.   The court need not reach the res judicata determination, however, as the underlying claims. . .fail on the merits.).   .).  However, as other courts determined on facts and arguments virtually identical to those presented in the instant case, there is no question that plaintiffs' suit is barred based on the preclusion doctrines of collateral estoppel and res judicata.  See Pope v. Federal Home Loan Mortg. Corp., Civ. No. 12-3094, 2013 WL 2251001, at *5-6 (D. Minn. May 22, 2013); Welk v. Federal Nat'l Mortg. Ass'n, Civ. No. 12-2864 (SRN/TNL), 2013 WL 2155463, at *4-5 (D. Minn. May 17, 2013); Butler v. Fed. Nat'l Mortg. Ass'n, Civ. No. 12-2697 (SRN/TNL), 2013 WL 2145701, at *6 (D. Minn. May 15, 2013).

timely redeem and, therefore, lack standing. Id., p. 15.  At any rate, for the purposes of defendants' motion to dismiss, the Court will accept that the plaintiffs have an interest in the Property.

In Minnesota, "[a]ny person in possession of real property personally . . . may bring an action against another who claims an estate or interest therein, or a lien thereon, adverse to the person bringing the action, for the purpose of determining such adverse claim and the rights of the parties, respectively."  Minn. Stat. §559.01.

In response to defendants' motion to dismiss the quiet title claim, plaintiffs contended that under Minnesota law all they had to plead was that they possessed the Property and defendants had a claim adverse to theirs.[6]  Plaintiffs' Memorandum in

---

[6]     The Minnesota Court of Appeals has rejected plaintiffs' argument that a quiet title claim premised solely on allegations that they were in possession of the Property and defendant had a claim adverse to them states a cause of action under Minnesota law. In a case similar to the instant suit and relying on the standards for pleading articulated in Twombly, the Court of Appeals stated:

> In their amended complaint, appellants summarily claim that they are in possession of their respective properties and that Deutsche Bank's mortgage liens are invalid.  Their only argument in this appeal is that these summary allegations are sufficient to overcome a motion to dismiss.  We disagree.
>
> Adopting appellants' position would mean that quiet-title claims will never be dismissed when merely the two facts of possession and invalid mortgage lien are alleged, without regard for how these facts would give rise to an entitlement to relief. This result undermines the court's duty to determine "whether the complaint sets forth a legally sufficient claim for relief." See Hebert [v. City of Fifty Lakes, 744 N.W.2d 226, 229 (Minn.2008)].  Beyond the summary facts alleged, appellants must present more than just labels or conclusions in their complaint to survive a motion to dismiss.

Opposition to Motion to Dismiss ("Pl. Opp. Mem."), pp. 9-14 [Docket No. 14].  According to plaintiffs, once these elements are pled, the burden shifted to defendants to prove the validity of their claims.  Id.  Moreover, plaintiffs maintained the Federal Rules of Civil Procedure do not alter the burden of proof of their state law quiet title claim.  Id., p. 14.

Plaintiffs further contended that their quiet title claim was viable because if BONYM was relying on the Assignment of Mortgage, then by failing to deliver the assignment by the date of closing of the 2006-HYB2 Trust, the assignment was void. Id., pp. 16-17.  In the alternative, plaintiffs maintained that even if BONYM had followed the PSA requirements, the foreclosure was void because BONYM failed to record the all of the assignments of mortgage before the commencement of the foreclosure by advertisement as required by Minn. Stat. § 580.02.  Id., pp. 11-16.  Finally, plaintiffs submitted that the operative Notice of Pendency & Power of Attorney was signed by a "known" robo-signer who had no personal knowledge of the document he was signing. Therefore, the Notice of Pendency & Power of Attorney to Foreclose was void and the foreclosure was void for want of a properly recorded Notice of Pendency & Power of Attorney.  Id., p. 18.

Plaintiffs' arguments fail for many reasons.

First, plaintiffs' argument that the Court should apply the Minnesota state court pleading standards to their quiet title claim is meritless.  Plaintiffs' former[7] counsel Butler

---

Mutua v. Deutsche Bank Nat. Trust Co., 2013 WL 6839723, at *2 (Minn. Ct. App. Dec. 30, 2013).

[7]  Butler was suspended from practice before the United States Court of Appeals for the Eighth Circuit on December 26, 2013.  In re Butler, No. 13–9013 (8th Cir. Dec. 26, 2013).  As a result, Butler was automatically suspended from practice before the District Court, effective December 26, 2013. See D. Minn. L.R. 83.6(b)(1); In re Butler,

has made this exact argument in the past and the Eighth Circuit could not have been more emphatic in its response: "[w]e apply federal pleading standards—Rules 8 and 12(b)(6)—to the state substantive law to determine if a complaint makes out a claim under state law." Karnatcheva v. J.P. Morgan Chase Bank, N.A., 704 F.3d 545 548 (8th Cir. 2013); see also Dunbar v. Wells Fargo Bank, N.A., 709 F.3d 1254, 1257 (8th Cir. 2013) (quoting Karnatcheva); Novak v. JP Morgan Chase Bank, 518 F. App'x 498, 501 (8th Cir. 2013) (quoting Karnatcheva); Gharwal v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-685 (PJS/JSM), 2013 WL 4838904, at *2 (D. Minn. Sept. 11, 2013) (noting that the Eighth Circuit has "squarely and repeatedly rejected" this argument).

In addition, the Eighth Circuit in Karnatcheva rejected the "burden of proof" argument in a quiet title action advocated by plaintiffs. 704 F.3d at 548. As the court explained in Gharwal:

> Karnatcheva rejected that argument, specifically holding that § 559.01 and the other authority on which [plaintiff] relies 'are not state substantive standards that govern the success of a quiet title claim. Karnatcheva, 704 F.3d at 548. Whether or not the Eighth Circuit's holding was "error" is not for this Court to decide; Karnatcheva is binding precedent, and this Court must apply it. The Court notes, however, that although he was addressing a different issue, plaintiff's counsel himself has conceded in the past "that, under Fed. R. Civ. P. 11, a quiet-title claim must be supported by an objectively reasonable basis for believing that the defendant's asserted interest in the property is invalid." Welk v GMAC Mortg., LLC, 850 F. Supp.2d 976, 988 (D. Minn. 2012), aff'd, 720 F.3d 736 (8th Cir. 2013). Here, plaintiff's quiet title claims are based only on conclusory statements and speculation, but no facts. The claim fails under Rule 12(b)(6).

---

Misc. No. 13–49(MJD), ECF No. 10 (D. Minn. Jan. 14, 2014). Plaintiffs are currently unrepresented by counsel.

2013 WL 4838904, at *3.

Thus, this Court has reviewed plaintiffs' quiet title claim applying the standards governing Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.

Second, mere allegations of plaintiffs' possession of the property and conclusory statements that the defendants' adverse claims are invalid are insufficient to state a claim for relief.   See Karnatcheva, 704 F.3d at 548 (affirming the district court's dismissal of the plaintiff's quiet title claim "because the plaintiff's pleadings, on their face, have not provided anything to support their claim that the defendants' adverse claims are invalid, other than labels and conclusions, based on speculation that transfers affecting payees and assignments of the notes were invalid."); Yang Mee Thao-Xiong v. American Mortg. Corp., Civ. No. 13-354 (MJD/TNL), 2013 WL 3788799, at *4 (D. Minn. July 18, 2013) (quoting Novak v. JP Morgan Chase Bank, N.A., Civ. No. 12-589 (DSD/LIB), 2012 WL 3638513, at *4 (D. Minn. Aug. 23, 2012), aff'd, 518 F. App'x 498 (8th Cir. 2013)) (finding that plaintiffs "'must state facts sufficient to allow the court to draw the reasonable inference that . . . she is in possession and that a defendant claims a right or title to the property, but has no such right or title.'").

The documents referenced in and attached to the Complaint show an unbroken chain of title documented through a recorded Assignment of Mortgage from MERS to BONYM.  Complaint, Ex. 8 (July 16, 2010, Assignment of Mortgage, recorded on August 30, 2012), 10 (Sheriff's Certificate of Sale and Foreclosure Record).  Thus, not only is there no factual support for plaintiffs' bald assertions regarding unrecorded assignments, the record shows the exact opposite—there were no unrecorded assignments of the Mortgage and the foreclosure was proper.

Third, plaintiffs' assertion that BONYM failed to deliver to the trust several unrecorded assignments of mortgage is spurious.  This Court has previously observed that documents governing mortgage-backed trusts often do not require a chain of written mortgage assignments when, as here, MERS is named the nominee for the lender and is listed as the Mortgagee (Complaint, Ex. 1, Mortgage).  See Wolff v. Bank of New York Mellon, --F. Supp.2d--, Civ. No. 13-2175 (PJS/JSM), 2014 WL 641510, at *12, n. 4 (D. Minn. Feb. 19, 2014) (citing Wollmering v. JPMorgan Chase Bank, N.A., No. A12–1926, 2013 WL 3779217, at *5 (Minn. Ct. App. July 22, 2013) ("Appellants argue that the Wollmering and Bakke/Fink mortgages were parts of trusts that required mortgage assignments according to the trust terms and that '[t]he trust documents are therefore evidence of the unrecorded assignments.' Section 2.01 of the PSAs does require that Structured Asset deposit with JPMorgan Chase the original mortgage. But under the express language of the PSAs, the requirement that Structured Asset deposit a certified copy of the assignment of the mortgage to JPMorgan Chase applies 'unless the Mortgage Loan is a MOM loan,' and a Mom Loan is defined as '[w]ith respect to any Mortgage Loan, MERS acting as the mortgagee of such Mortgage Loan, solely as nominee for the originator of such Mortgage Loan and its successors and assigns, at the origination thereof.'  Thus, Structured Asset was not required to deposit certified copies of assignments of the Wollmering and Bakke/Fink mortgages, which named MERS as mortgagee as nominee for the originator and its successors, and the trust documents are not evidence of unrecorded assignments.")); Colton v. U.S. Nat. Bank Ass'n, Civ. No. 3:12-3584-D, 2013 WL 1934560, at *4 (N.D. Tex. May 10, 2013) ("[I]t is reasonable that the PSA would not require that a MERS-designated mortgage loan be

assigned to U.S. Bank to evidence transfer of ownership to the Trust.  The purpose of MERS is to avoid the task of preparing and recording separate assignments for each mortgage conveyance.") (citing MERS: The Mortgage Electronic Registration System, 63 Consumer Fin. L.Q. Rep. 262, 263 (2009)).

Fourth, even if the Assignment of Mortgage was required to be delivered to the trust, New York law does not void BONYM's interest in the Mortgage.  The Complaint cited Erobobo, 972 N.Y.S.2d 147, at *8-9 (Complaint, ¶17), in which the court concluded that the transfer of an assignment of a mortgage into a trust in violation of the terms of the PSA—made 18 months after the trust had "closed" and had not been assigned in by the depositor—rendered the assignment void under New York law.   However, the majority of courts to examine Erobobo have criticized the decision and held that under New York law, an assignment of a mortgage into a trust in violation of the terms of the PSA is voidable, and not void, as the action can be ratified by the beneficiaries.  See, e.g., Butler v. Deutsche Bank Trust Co. Amer., 748 F.3d 28, 37, n. 8 (1st Cir. 2014) ("[T]he vast majority of courts to consider the issue have rejected Erobobo's reasoning, that despite the express terms of N.Y. Est. Powers & Trust Laws §7-2.4, the acts of a trustee in contravention of a trust may be ratified, and are thus voidable) (citations omitted);  Felder v. Countrywide Home Loans, Civ. No. H–13–0282, 2013 WL 6805843, at *19 (S.D. Tex. Dec. 20, 2013) (quoting Green v. Bank of Amer. N.A., Civ. No. H–13–1092, 2013 WL 3937070, at *3 (S.D. Tex. July 30, 2013), citing Mooney v. Madden, 193 A.D.2d 933, 597 N.Y.S.2d 775, 776 (N.Y. App. Div. 1993)) ("'Courts applying New York law have treated actions by trustees as voidable.'"); Halacy v. Wells Fargo Bank, N.A., Civ. No. 12-11447-TSH, 2013 WL 6152351, at *3 (D. Mass. Nov. 21, 2013) (citing

Koufos v. U.S. Bank N.A., 939 F. Supp.2d 40, 49 n. 5, 56 n. 2 (D. Mass. 2013) (criticizing Erobobo and finding that a "non-PSA-compliant" transaction is typically "voidable," rather than "void" under New York law)); Deutsche Bank Nat. Trust Co. v. Adolfo, Civ. No. 12-C-759, 2013 WL 4552407, at *3 (N.D. Ill. Aug. 28, 2013) ("we are persuaded by the courts that have held that a transfer that does not comply with a PSA is voidable, not void.") (citations omitted); Calderon v. Bank of America N.A., 941 F. Supp.2d 75, 7663 (W.D. Tex. 2013) (finding that New York Courts have held that a beneficiary can ratify a trustee's ultra vires act, and if an act may be ratified, it is voidable rather than void) (citing Mooney v. Madden, 193 A.D.2d 933, 597 N.Y.S.2d 775 (1993); Matter of Estate of Janes, 165 Misc.2d 743, 630 N.Y.S.2d 472, 477 (Sur. 1995), aff'd as modified sub nom., Matter of Janes, 223 A.D.2d 20, 643 N.Y.S.2d 972 (1996), aff'd sub nom., Matter of Estate of Janes, 90 N.Y.2d 41, 659 N.Y.S.2d 165, 681 N.E.2d 332 (N.Y. 1997); Leasing Serv. Corp. v. Vita Italian Restaurant, 171 A.D.2d 926, 566 N.Y.S.2d 796, 797-98 (1991); Hine v. Huntington, 118 A.D. 585, 103 N.Y.S. 535, 540 (1907); 106 N.Y. Jur.2d Trusts § 431 ("[T]rustee may bind trust to an otherwise invalid act or agreement which is outside the scope of the trustee's power when beneficiary consents to or ratifies the trustee's ultra vires act or agreement.")) (citations omitted).

Fifth, plaintiffs' conclusory claim that "documents" were "not executed by legally authorized persons," (Complaint, ¶53), "do[es] not hold up to even the slightest scrutiny." Simmer v. HSBC Bank, Civ. No. 13-1549 (DSD/AJB) 2013 WL 6244710, at *3 (D. Minn. Dec. 3, 2013) (plaintiff's allegations regarding individuals' alleged lack of authority to sign Notices of Pendency and Powers of Attorney failed because the allegations are "merely conclusory assertions without any factual allegations to support

them."); Segura v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-531(SRN/JJK), 2013 WL 3034096, at *2 (D. Minn. June 17, 2013) (rejecting "contention that nearly every individual who signed a document in support of the foreclosure did not have the authority to do so" as "implausible and speculative, just the sort of 'vague claims' that have been rejected repeatedly by courts in this District and by the Eighth Circuit Court of Appeals.") (citing Mine v. Federal Home Loan Mortg. Corp., Civ. No. 13–220, 2013 WL 2443852, at *4 (D. Minn. June 5, 2013); Welk v. Federal Nat'l Mortg. Ass'n, Civ. No. 12-2864 (SRN/TNL), 2013 WL 2155463, at *4 (D. Minn. May 17, 2013) ("[Plaintiff] insists that the individual who signed the assignment to Wells Fargo and the individual who signed the power of attorney allowing Wells Fargo to institute foreclosure proceedings did not have the authority to do so, and that the law firm and Trisko knew that the individuals had no authority but proceeded with the foreclosure anyway. But there are no facts of any kind—no evidence pled supporting these allegations.").

Sixth, plaintiffs' claims that the Notice of Pendency & Power of Attorney was invalid because Bell "robo-signed" the document, (Complaint, ¶¶35, 36), is meritless. Not only is there no factual support for the allegation that Bell "robo-signed" the Notice of Pendency & Power of Attorney at issue in this case, but the fact that his name appears on a list in Southern Essex District Register of Deeds is irrelevant to any issue in this case. Similarly, the statement that Bell signed the document without knowledge of its contents is utterly without factual support. See Portillo v. HSBC Mortg. Servs., Inc., Civ. No. 13-2370 (DWF/JSM), 2014 WL 1431394, at *2 (D. Minn. April 14, 2014) (rejecting claim that because the individual who signed a Power of Attorney was identified as a "robo-signer" on a list in the Southern Essex District Register of Deeds

the individual lacked signing authority as "meritless," lacking in appropriate factual support and "irrelevant to any issue in this case."); Wolff, 2014 WL 641510, at *12, n.5 (a claim that an individual whose name appeared on a list in the Southern Essex Register of Deed as a "robo-signer" "does not create a 'plausible inference' that he did 'robo-signed' the document."); Robinson v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-1868(JNE/JSM), 2014 WL 258644, at *9 (D. Minn. Jan. 23, 2014) (same).

Lastly, even if the PSA applied to the Mortgage or there any truth to plaintiffs' speculative statements about the lack of signing authority of Bruns (as to the July 16, 2010 Assignment of Mortgage or Bell (as to the August 12, 2010 Notice of Pendency & Power of Attorney to Foreclose), plaintiffs suffered no injury in fact as a result and, therefore lack standing to pursue a quiet title claim on this basis. See Novak, 2012 WL 3638513, at *6, aff'd, 518 F. App'x 498 (8th Cir. 2013) (dismissing plaintiff's complaint with prejudice and noting that they lacked standing to challenge any purported breach of a PSA); Karnatcheva, 704 F.3d at 547 ("The plaintiffs base this request for declaratory relief on allegations that their notes and mortgages were transferred to trusts underlying mortgage-backed securities and that their foreclosures violated the terms of the trust agreements relating to these mortgage-backed securities. But district courts in Minnesota have recently addressed this issue and have uniformly held that mortgagors do not have standing to request declaratory judgments regarding these types of trust agreements because the mortgagors are not parties to or beneficiaries of the agreements. We believe that the reasoning in these cases is sound, and we adopt it.") (internal citations omitted); Wolff, 2014 WL 641510, at *1 ("The Eighth Circuit has held that parties in plaintiffs' position do not have standing to raise this type

of argument."); <u>Sorem</u>, 2013 WL 4611115, at *3 ("Plaintiffs base their claims on the primary argument that the foreclosure is void because unrecorded assignments exist, and in support Plaintiffs argue that BNYM's Pooling and Servicing Agreement requires that an assignment be executed in favor of BNYM. Plaintiffs lack standing to make this challenge.") (citations omitted); <u>Quale v. Aurora Loan Services, LLC</u>, Civ. No. 13-621 (JNE/AJB), 2013 WL 3166584, at *1 (D. Minn. June 20, 2013) ("Insofar as the Quales based their claims on the allegations that an individual lacked authority to execute the Assignment of Mortgage, the Court rejects this argument because the Quales lack standing to make such a challenge, and even if they did have standing, their claims are fatally implausible and speculative."); <u>Forseth v. Bank of Am., N.A.</u>, Civil No. 13-38 (SRN/TNL), 2013 WL 2297036, at *5 (D. Minn. May 24, 2013) ("The allegations regarding unauthorized signatures on every document related to the foreclosure process for the Forseths' mortgage are similarly implausible and pure speculation. But even if the signatures were unauthorized, the harm caused by the lack of signing authority is harm to MERS or BAC, in the case of Mr. Bruns, or BAC/Bank of America or Fannie Mae in the case of Mr. McDaniel and Ms. Girvan . . . [e]ven if all three of these individuals lacked signing authority, as the Forseths claim, they have suffered no injury as a result and therefore have no standing to pursue claims.") (citations omitted); <u>Kaylor v. Bank of Am., N.A.</u>, Civ. No. 12-1586 (DSD/SER), 2012 WL 6217443, at *5 (D. Minn. Dec. 13, 2012) (finding that even if individual who effectuated the assignment of the mortgage did not have authority to do so, homeowners not a party to the mortgage assignment had no standing to challenge the assignment.); <u>Stinson v. U.S. Bank, N.A.</u>, Civ. No. 12-68 (SRN/AJB), 2012 WL 2529354, at *3 (D. Minn. June 12, 2012) ("[T]o the

extent that the [plaintiffs] allege that the defendants did not comply with the provisions of the PSA, the [plaintiffs] have no standing to assert claims on this basis because they are not parties or third-party beneficiaries to such agreements."); Greene v. Home Loan Servs., Inc., Civ. No. 09-719 (DWF/JJK), 2010 WL 3749243, at *4 (D. Minn. Sept. 21, 2010) ("Plaintiffs do not have standing to bring their challenge regarding the securitization of the mortgage or the Pooling and Service Agreement.  Even assuming this matter was adequately pled, which it was not, Plaintiffs are not a party to the Pooling and Service Agreement and therefore have no standing to challenge any purported breach of the rights and obligations of that agreement.").

For all of these reasons, plaintiffs' quiet title claim fails and should be dismissed.

**B.    Slander of Title**

To state a claim for slander of title, a plaintiff must allege facts that show: (1) there was a false statement concerning the real property owned by the plaintiff; (2) the false statement was published to others; (3) the false statement was published maliciously; and (4) the publication of the false statement concerning title to the property caused the plaintiff pecuniary loss in the form of special damages.  Paidar v. Hughes, 615 N.W.2d 276, 279–80 (Minn. 2000) (citation omitted).  To plead malice, a plaintiff "must raise factual allegations sufficient to create a plausible claim that at least one of the [  ] parties acted with a reckless disregard for the truth, 'despite a high degree of awareness of probable falsity.'"  Dunbar, 709 F.3d at 1258 (quoting Brickner v. One Land Dev. Co., 742 N.W.2d 706, 711 (Minn. Ct. App. 2007)); see also Quevli Farms, Inc. v. Union Sav. Bank & Trust Co., 178 Minn. 27, 226 N.W. 191, 192 (Minn. 1929) (concluding that to be a malicious statement, it must be a "groundless disparagement of

the plaintiff's title or property . . . made without probable cause."). The filing of an instrument known to be inoperative is a false statement that, if done maliciously, constitutes slander of title. Kelly v. First State Bank of Rothsay, 177 N.W. 347, 347 (Minn. 1920). Additionally, plaintiffs must establish that they relied on the alleged false statement. See Welk, 850 F.Supp.2d at 993-94.

The Court finds the slander of title claim must be dismissed because plaintiffs alleged no facts from which this Court could infer that BONYM made a false statement, acted maliciously or that plaintiffs suffered any pecuniary loss from a publication concerning title to the Property. See Ko v. Mortgage Electronic Registration System, Civ. No. 13-596 (JRT/AJB), 2013 WL 4052680, at *4 (D. Minn. Aug. 9, 2013) (dismissing similarly-pled slander of title claim). Therefore, plaintiffs failed to state a claim for slander of title, and dismissal is required.[8]

### C.    Declaratory Judgment

A declaratory judgment is a remedy, not a cause of action. See, e.g., Onvoy, Inc. v. ALLETE, Inc., 736 N.W.2d 611, 617–618 (Minn. 2007) (a declaratory judgment action may be maintained only where there is a justiciable controversy); Buck v. American Airlines, Inc., 476 F.3d 29, 33 n.3 (1st Cir. 2007) (noting that the Declaratory Judgment

---

[8]    The Court notes that a slander of title claim is subject to the heightened pleading standard of Fed. R. Civ. P. 9(b). See Murphy v. Aurora Loan Servs., LLC, 699 F.3d 1027, 1032 (8th Cir. 2012) (Rule 9(b) applies to slander of title claims); Johnson v. Bank of New York Mellon, Civ. No. 13-2207(DSD/JSM), 2014 WL 129640, at *5 (D. Minn. Jan. 14, 2014); Ko, 2013 WL 3088728, at *4; Pope v. Federal Home Loan Mortg. Corp., Civ. No. 12-3094(SRN/JJG), 2013 WL 2251001, at *4 (D. Minn. May 22, 2013); Haubrich v. U.S. Bank Nat'l Ass'n, Civ. No. 12-565(DSD/TNL), 2012 WL 3612023, at *6 (D. Minn. Aug. 21, 2012), aff'd, 720 F.3d 979 (8th Cir. 2013). Defendants did not argue in favor of dismissal based on plaintiffs' failure to meet this standard. Suffice it to say, however, having failed to plead any facts to support a slander of title claim, the claim also fails to meet the Rule 9(b) standard.

Act, 28 U.S.C. § 2201 "creates a remedy, not a cause of action").  In light of the Court's

conclusion that plaintiffs' substantive claims must be dismissed under Rule 12(b)(6),

"[she is] left with a remedy in search of right."  Scanlon v. Northwest Mortg., Inc., Civ.

No. 11-3128 (MJD/TNL), 2012 WL 2885131, at *7 (D. Minn. July 13, 2012).  See also

Lara, 2013 WL 3088728 at, *3 (finding that where plaintiff had failed to state a

substantive claim, the Amended Complaint also failed to state a claim for declaratory

judgment) (citing Weavewood, Inc. v. S & P Home Invs., LLC, 821 N.W.2d 576, [579]

(Minn. 2012) ("A declaratory judgment is a procedural device through which a party's

existing legal rights may be vindicated so long as a justiciable controversy exists.")).

Plaintiffs' claim for declaratory judgment must be dismissed because there is no legal

basis for affording the remedy.

For all of these reasons, this Court recommends that plaintiffs' suit be dismissed

with prejudice.[9]

---

[9]    "Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be
with leave to amend."  Michaelis v. Neb. State Bar Ass'n., 717 F.2d 437, 438-39
(8th Cir. 1983).   Nonetheless, when a complaint is so deficient or defective that the
court is convinced that its defects cannot be cured through re-pleading, dismissal with
prejudice is appropriate.   Such is the case here.   See McLean v. United States,
566 F.3d 391, 400 (4th Cir. 2009) ("to the extent . . . that a district court is truly unable to
conceive of any set of facts under which a plaintiff would be entitled to relief, the district
court would err in designating [a] dismissal to be without prejudice.  Courts, including
this one, have held that when a complaint is incurable through amendment, dismissal is
properly rendered with prejudice and without leave to amend."); McKesson HBOC, Inc.
v. New York State Common Ret. Fund, Inc., 339 F.3d 1087, 1096 (9th Cir. 2003)
(dismissal with prejudice is appropriate where "deficiencies in [plaintiff's] claims cannot
be cured by amendment"); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (a
pro se litigant should be given chance to amend complaint unless it is "absolutely clear
that the deficiencies of the complaint could not be cured by amendment."); Ikechi v.
Verizon Wireless, Civ. No. 10-4554 (JNE/SER), 2011 WL 2118797, at *5, n. 6 (D. Minn.
April 7, 2011) (recommending dismissal with prejudice of plaintiff's fraud claims because
it was unlikely that plaintiff could cure the defective pleading on re-pleading), 2011
WL 2118791, at *3 (D. Minn. May 25, 2011) (adopting the Report and Recommendation

IV.     RECOMMENDATION

For the reasons set forth above, it is recommended that:

1.      Defendants' Motion to Dismiss [Docket No. 7] be **GRANTED.**

2.      This matter be dismissed with prejudice.


Dated:  July 24, 2014                    *Janie S. Mayeron*
                                         JANIE S. MAYERON
                                         United States Magistrate Judge


## NOTICE

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **August 14, 2014**, a writing that specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

---

of Magistrate Judge Rau regarding dismissal of plaintiff's fraud claims for failure to satisfy the particularity requirement of Rule 9(b)).